## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LEONA WALKER,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 22-CV-2190-JAR-ADM** |
| **CHRISTINE E. WORMUTH, Secretary of the Army,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff brings this action against Christine E. Wormuth, Secretary of the United States Army, alleging claims of discrimination and retaliation on the basis of race under Title VII of the Civil Right Act of 1964. Before the Court is Defendant's Motion to Dismiss (Doc. 10) under Fed. R. Civ. P. 12(b)(6). The motion is fully briefed and the Court is prepared to rule. For the reasons explained below, Defendant's motion is granted in part and denied in part.

## I.    Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[1] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but it requires more than "a sheer possibility."[2] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[3]

---

[1] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Finally, the Court must accept the plaintiff's factual allegations as true, view those facts in the light most favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the defendant is liable in light of the applicable law.[4]

Although "[t]he 'usual rule' is 'that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss,' . . . 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[5]   Here, the Court considers the two administrative charges attached to Defendant's motion to dismiss: (1) Plaintiff's June 26, 2018 Formal Complaint of Discrimination;[6] and (2) Plaintiff's July 19, 2018 Formal Complaint of Discrimination.[7]   These documents are referred to in the Complaint and are central to Plaintiff's claims.   Neither party disputes their authenticity.

## II.   Background

The following facts are either alleged in Plaintiff's Complaint or included in the administrative charges attached to Defendant's motion.

Plaintiff was employed by the United States Army and worked at the Irwin Army Community Hospital ("IACH") at Fort Riley, Kansas.   At some point before May 7, 2018, Plaintiff complained about racism in the workplace, which triggered "EEO and Army Regulation 15-6 investigations."[8]   Plaintiff had "long been labeled and regarded by the Defendant as a

---

[4] *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

[5] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (alteration omitted) (first quoting *Alvarado v. KOB-TV, LLC*, 493 F.3d 1201, 1215 (10th Cir. 2007); and then quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[6] Doc. 11-4.

[7] Doc. 11-5.

[8] Doc. 1 ¶ 9.

troublemaker and 'angry black woman' due to her opposition to racism in the workplace and complaints she has filed of ongoing racially discriminatory and retaliatory employment practices against her."[9]

Plaintiff's job performance was excellent.  Yet, on May 7, 2018, Plaintiff's supervisor, Major Ugaddan, refused to rate Plaintiff's performance due to the ongoing EEO and 15-6 investigation.  Major Ugaddan told Plaintiff that she resented Plaintiff for causing Major Ugaddan to become involved in an EEO complaint for the first time in her career.  Major Ugaddan also asked Plaintiff why she stayed at "the WTB" given her complaints.  Because Major Ugaddan refused to rate Plaintiff's performance, Plaintiff did not receive a bonus, performance awards, or other recognition for her job performance.  Other similarly-situated individuals who did not complain did receive these benefits.

On May 16, 2018, Captain Brandon Williams referenced Plaintiff's complaints as "personality conflicts, []past history, and/or current issues," and stated that he hoped this history "would not prevent IACH from accomplishing its mission."[10]  In July 2018, Plaintiff's second-level supervisor, Loyce Striggow, reassigned Plaintiff based on the complaints Plaintiff had filed. Plaintiff alleges that all of the above-stated incidents are examples of a racially hostile work environment.

Plaintiff filed her first administrative charge on June 26, 2018.  She checked the boxes for race and age as the bases for her discrimination claims.  In the narrative portion of the complaint, she stated in relevant part that "[i]t was improper to premise the evaluation of my job performance on a pending 15-6, and EEO claims," and that this refusal inappropriately tethered

---

[9] *Id.* ¶ 7.

[10] *Id.* ¶ 10.

the evaluation of her job performance with her complaints.[11]  She claims she was singled out for this treatment because she has "filed a number of EEO complaints due to the ongoing hostile work environment."[12]  Plaintiff also referenced Captain Williams' comments about her complaints amounting to a personality conflict.  She claimed in this document that Captain Williams referred to "an ongoing rumor mill . . . that I am a racist and a troublemaker."[13]  Defendant denied this administrative charge on February 24, 2022.

Plaintiff filed her second administrative charge on July 19, 2018.  On this form, she checked the boxes for race, sex, and age as the bases for her discrimination claims.  In the narrative portion of the complaint, she stated that she continues to suffer from an ongoing hostile work environment.  She specifically references a "three year letter of reprimand, and my reassignment from the WTB," which she asserts were based on her protected activity of causing a 15-6 investigation, "which incorrectly and falsely concluded that I was a racist who had created a hostile work environment."[14]  She further alleged that the 15-6 investigation was improper and not carried out by an individual qualified to properly investigate.  Defendant denied this administrative charge on February 24, 2022.

Plaintiff filed her Complaint in this case on May 25, 2022.  Plaintiff alleges in the Complaint that she was subjected to "racially discriminatory and unlawful employment practices, consisting of but not limited to Defendant's subjection of Plaintiff to a hostile and intimidating work environment" in violation of 42 U.S.C. § 2000e-2.[15]  Plaintiff further alleges a retaliation

---

[11] Doc. 11-4 at 5.

[12] *Id.*

[13] *Id.*

[14] Doc. 11-5 at 6.

[15] Doc. 1 ¶ 6a.

claim under Title VII "consisting of but not limited to Defendant's subjection of Plaintiff to a hostile and intimidating work environment due to Plaintiff's prior protected activity."[16]  Plaintiff alleges that she has long been labeled a "troublemaker" and an "angry black woman" due to her complaints about racism in the workplace, and then provides "examples" of her employer's hostile work environment: (1) Ugaddan's refusal to rate Plaintiff's performance due to ongoing EEO and Army Regulation 15-6 investigations; (2) Williams' statements on May 16, 2018, about Plaintiff's discrimination complaints; (3) Plaintiff's reassignment in July 2018; (4) Ugaddan's comments about Plaintiff's discrimination complaints; and (5) Plaintiff did not receive a bonus, performance awards, or other recognition for her job performance because Major Ugaddan refused to rate Plaintiff's performance.[17]

## III.   Discussion

### A.    Failure to Exhaust Administrative Remedies

Title VII requires a plaintiff to exhaust her administrative remedies by filing an administrative charge.[18]  Federal employees such as Plaintiff must comply with "specific administrative complaint procedures in order to exhaust their administrative remedies," which are set forth in Part 1614 of Chapter 29 of the Code of Federal Regulations.[19]  A plaintiff's failure to exhaust administrative remedies is no longer a jurisdictional bar to suit, but instead "merely permits the employer to raise an affirmative defense."[20]  This characterization only matters, however, "'when the defendant has waived or forfeited the issue[,]' because if

---

[16] *Id.* ¶ 6b; 42 U.S.C. § 2000e-3.

[17] Doc. 1 ¶¶ 7–15.

[18] 42 U.S.C. § 2000e-5.

[19] *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (quoting *Showalter v. Weinstein*, 233 F. App'x 803, 804 (10th Cir. 2007)).

[20] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

exhaustion is not jurisdictional, 'the court must dismiss only if the issue has been properly presented for decision.'"[21]  Here, Defendant did not waive or forfeit the issue, and it has properly presented it to the Court for decision in its Rule 12(b)(6) motion.

Defendant argues that the following claims in the Complaint were not included in her administrative charges and therefore were not administratively exhausted: (1) that Defendant labeled Plaintiff as an "angry black woman,"; (2) that Major Ugaddan made inappropriate discriminatory and retaliatory comments to her; and (3) that Plaintiff lost a bonus or performance-based benefit due to the failure to rate her.  Defendant further alleges Plaintiff's claim based on Major Ugaddan's failure to rate her on May 7, 2018, was not timely exhausted.

### 1.    Scope of Claims Asserted in the Administrative Charges

The extent to which Plaintiff has exhausted certain claims she alleges in the Complaint depends on whether they are construed as discrete discriminatory and retaliatory acts, or instead part of her hostile work environment claims.  The United States Supreme Court has explained that discrete discriminatory and retaliatory acts "such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."[22]  This type of "discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happen[s],'" and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[23]

---

[21] *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quoting *McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007)).

[22] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

[23] *Id.* at 110, 113; *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir. 2011) (explaining that the Supreme Court's ruling in *Morgan* does not alter the rule that discrete acts of discrimination "trigger the statute of limitations when announced to the claimant" (quoting *Morgan*, 536 U.S. at 114)).

Hostile work environment claims are different because they inherently involve repeated conduct:

> The "unlawful employment practice" therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.  Such claims are based on the cumulative effect of individual acts.
>
> . . . .
>
> . . . The timely filing provision only requires that [the] plaintiff file a charge within a certain number of days after the unlawful practice happened.  It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability.[24]

Defendant does not appear to assert that Plaintiff failed to exhaust her hostile work environment claims and the Court finds that under the precedent cited above, those claims have been exhausted.  Defendant instead asserts an exhaustion defense as to three of the specific incidents described in the Complaint, to the extent they are asserted as discrete discriminatory and retaliatory acts.  To decide this issue, the Court must determine whether the claims Plaintiff asserts in the Complaint were within "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."[25]  The Court must liberally construe the administrative charges to make this determination.[26]

First, Defendant argues that neither administrative charge describes Plaintiff's assertion that she was mischaracterized as an "angry black woman" by her supervisors.  The Court finds

---

[24] *Morgan*, 536 U.S. at 115, 117 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[25] *Smith*, 904 F.3d at 1164 (quoting *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185–86 (10th Cir. 2018)).

[26] *Id.* (citations omitted).

that this claim is within the scope of the administrative investigation that could reasonably be expected to follow from the facts alleged in the June 26, 2018 charge. In that document, Plaintiff asserts that Captain Williams referred to "an ongoing rumor mill . . . that [she was] a racist and a troublemaker."[27] It is reasonable to expect that the investigation into this claim would include determining whether Plaintiff had developed a negative and unfair reputation based on her complaints of discrimination. In the Complaint, she alleges that she had "long been labeled and regarded by the Defendant as a troublemaker and 'angry black woman' due to her opposition to racism in the workplace and complaints she has filed of ongoing racially discriminatory and retaliatory employment practices against her."[28] This allegation is within the scope of her assertion in the June 26, 2018 charge that rumors had developed that she was a racist and a troublemaker.

Next, Defendant argues that neither charge references Major Ugaddan's comments about her discrimination complaints set forth in the Complaint. The Court agrees. Plaintiff neither names Major Ugadden, nor references her inappropriate comments in the narrative section of either charge. It is therefore not reasonable to expect an investigation into her charges to address Major Ugaddan's comments. Plaintiff suggests that because she listed Major Ugaddan as a potential witness on both charges, it is reasonable to expect that an investigation into her comments would follow. But Plaintiff makes no effort to explain how listing Major Ugaddan— her supervisor—as a potential witness would put the agency on notice of the need to investigate whether she made these specific comments. To the extent Plaintiff claims that these comments constitute a discrete unlawful employment practice, she must exhaust her administrative

---

[27] Doc. 11-4 at 5.

[28] Doc. 1 ¶ 7.

remedies,[29] yet neither charge put the agency on notice of the need to investigate Major Ugaddan's comments.

Third, Defendant argues that Plaintiff's assertion that she lost out on a bonus and performance awards was not exhausted.  Most of the narrative portion of Plaintiff's June 26, 2018 charge complains about the refusal to rate her job performance in May.  She stated that it was inappropriate to condition her performance evaluation on her complaints of discrimination, and asserts that she was singled out for this negative treatment.  It would be reasonable to expect the agency investigating this claim to consider the implications of its refusal to rate her performance—her lack of a bonus and performance recognition.  Therefore, the Court finds that this claim was part of her claim in the June 26 charge that the agency unlawfully refused to rate her performance in May 2018 because of her prior complaints of discrimination.

### 2.    Timeliness

Next, the Court considers Defendant's argument that Plaintiff failed to timely exhaust any claim of discrete discrimination or retaliation based Defendant's refusal to rate her performance on May 7, 2018.  Before suing, a federal employee "must . . . 'initiate contact' with an Equal Employment Opportunity counselor at h[er] agency 'within 45 days of the date of the matter alleged to be discriminatory.'"[30]  Plaintiff alleges that the decision to not rate her performance was made on May 7, 2018.  Therefore, under the regulation she was required to initiate contact with the EEO counselor by June 21, 2018.   Instead, Plaintiff filed her charge on June 26, 2018, five days past the deadline.  Therefore, Plaintiff's discrete discrimination and

---

[29] *Morgan*, 536 U.S. at 114–15.

[30] *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (quoting *Green v. Brennan*, 578 U.S. 547, 553 (2016)); *see also* 29 C.F.R. § 1614.105(a)(1).

retaliation claims based on Defendant's refusal to rate her performance on May 7, 2018 must be dismissed for failure to timely exhaust.

In sum, the Court grants in part Defendant's motion to dismiss for failure to exhaust Plaintiff's claims based on discrete acts of discrimination or retaliation. Defendant's motion is granted as to Plaintiff's claim that Major Ugadden made inappropriate comments to her about her prior complaints of discrimination because it is outside the scope of either administrative charge. Defendant's motion is also granted as to Plaintiff's claim that Defendant declined to rate her performance on May 7, 2018, because it was not timely exhausted. As described above, Plaintiff's claims based on the refusal to rate her performance include the allegation that she was improperly denied a bonus and other performance-based awards. Because the refusal to rate claim is untimely, so too is her contention that she was denied a bonus or other performance-based award. Defendant's motion to dismiss based on administrative exhaustion is otherwise denied.

### B.      Failure to State a Plausible Claim

The following claims asserted in the Complaint have been exhausted: (1) discriminatory hostile work environment; (2) retaliatory hostile work environment (3) discrete claims of discrimination and retaliation based on Williams' May 16, 2018 statements; and (4) discrete claims of discrimination and retaliation based on Plaintiff's July 2018 reassignment. Defendant argues that these remaining claims must be dismissed on the merits for failure to state a plausible claim for discrimination or retaliation under Title VII.

In *Khalik v. United Air Lines*,[31] the Tenth Circuit provided an extensive analysis of the pleading standard for employment discrimination and retaliation claims under *Iqbal* and

---

[31] 671 F.3d 1188 (10th Cir. 2012).

*Twombly*.[32]  The court was careful to note that the plaintiff is not required to "set forth a prima

facie case for each element" to successfully plead a claim of discrimination.[33]  Instead, she is

only required to "set forth plausible claims."[34]  Nevertheless, "the elements of each alleged cause

of action help to determine whether [the plaintiff] has set forth a plausible claim."[35]  The Court

therefore considers the elements of each claim alleged by Plaintiff below to help determine

whether she sets forth plausible claims of discrimination and retaliation in this case.

### 1.    Discriminatory Hostile Work Environment

Under Title VII, an employer is prohibited from "discriminat[ing] against any individual

with respect to [her] compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin."[36]  The statute applies to

discriminatory hostile or abusive work environments in addition to "tangible" forms of

discrimination.[37]  The elements of a racially hostile work environment are:

> (1) the plaintiff is a member of a protected group; (2) the plaintiff
> was subjected to unwelcome harassment; (3) the harassment was
> based on the protected characteristic (in this case, race); and (4) the
> harassment was sufficiently severe or pervasive to alter a term,
> condition, or privilege of the plaintiff's employment and created an
> abusive working environment.[38]

Defendant argues that the Court must dismiss this claim because Plaintiff fails to allege specific

facts about being labeled a "troublemaker" and "angry black woman."  Defendant further argues

---

[32] *Id.* at 1193–94.

[33] *Id.* at 1193.

[34] *Id.*

[35] *Id.* at 1192.

[36] 42 U.S.C. § 2000e-2(a)(1).

[37] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21(1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)).

[38] *Asebedo v. Kan. State Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014) (citing *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262–63 (10th Cir. 2005)).

that the Complaint is devoid of facts that plausibly demonstrate that the harassment Plaintiff endured was because of her race, and that the harassment was sufficiently severe or pervasive.

The Court disagrees with Defendant that Plaintiff must plead with specificity the who, when, and where of being labeled a "troublemaker" and "angry black woman." It is sufficient that Plaintiff alleges that she was labeled as such, and that this view of her created the alleged hostile work environment, as evidenced by several specific examples of conduct set forth in the Complaint.

The Court also disagrees with Defendant that the Complaint is devoid of facts to support Plaintiff's claim that the hostile work environment was based on her race. Viewing the facts alleged as true, the hostile work environment was based in part on Defendant's view of her as an "angry black woman." Moreover, she alleges that her prior race discrimination complaints caused Defendant to hold this view. She alleges this inappropriate label caused Defendant to discriminate and retaliate against her by creating a hostile work environment. This is sufficient at the pleading stage to demonstrate that her claim is based on her protected status.

Finally, the Court finds that Plaintiff pleads sufficient facts to support the fourth element of her claim—that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.[39] This element requires the Court to consider the work environment both subjectively and objectively.[40] It requires consideration of "the conduct's frequency and severity; 'whether it is physically threatening or humiliating, or a mere offensive utterance'; and whether it unreasonably interferes with the plaintiff employee's work

---

[39] *See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (0th Cir. 2008) (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)).

[40] *Id.* (citing *Herrera*, 474 F.3d at 680).

performance."[41]   Here, Plaintiff contends that the hostile work environment included several disparaging comments, reassignment, and a failure to rate her performance, causing her to not receive a bonus or performance based recognition.   These facts are sufficient to plausibly allege that Defendant's conduct went beyond the ordinary tribulations of the workplace, an inquiry that is "quintessentially a question of fact."[42]   Accordingly, Defendant's motion to dismiss the discriminatory hostile work environment claim is denied.

### 2.    Retaliatory Hostile Work Environment

Plaintiff also appears to allege hostile work environment as part of her retaliation claim under Title VII because she claims that she was subjected to a hostile work environment in retaliation for her protected activity.   Although the Tenth Circuit has not explicitly recognized a claim for retaliatory harassment,[43] Defendant does not dispute that such a claim is cognizable for purposes of its motion to dismiss.   Therefore, for purposes of this motion, the Court assumes without deciding that a retaliatory hostile work environment is a cognizable claim in the Tenth Circuit.   The elements of this claim are the same as the requisite elements of a prima facie case of retaliation: (1) protected opposition to discrimination; (2) a materially adverse action; and (3) a causal connection between the protected activity and the materially adverse action.[44] Additionally, "the conduct must be sufficiently severe or pervasive that it could well dissuade a reasonable worker from engaging in protected activity."[45]

---

[41] *Id.* (quoting *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir.2007)).

[42] *Id.* (quoting *Herrera*, 474 F.3d at 680).

[43] *See Kline v. Utah Anti-Discrimination & Labor Div.*, 418 F. App'x 774, 780 n.2 (10th Cir. 2011).

[44] *Adcox v. Brennan*, No. 15-CV-9258-JWL, 2017 WL 2405326, at *7 (D. Kan. June 2, 2017) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211–12 (10th Cir. 2008)).

[45] *Id.* (citations omitted).

Plaintiff alleges that she engaged in protected opposition to discrimination, and that this caused the hostile work environment. She further alleges severe and pervasive conduct as described on the discriminatory hostile work environment claim— disparaging comments, reassignment, and a failure to rate her performance, causing her to not receive a bonus or performance based recognition. The Court finds that these facts are sufficient at the pleading stage to demonstrate a retaliatory hostile work environment.

### 3. Discrete Acts of Discrimination—Captain Williams' Statements and Reassignment

Plaintiff may establish a prima facie case of race discrimination under Title VII by demonstrating: (1) membership in protected class; (2) an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.[46] Defendant argues that neither Captain Williams' comments nor Plaintiff's reassignment were adverse employment actions that could support a discrimination claim.

An adverse employment action with respect to a discrimination claim "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[47] The liberal definition of "adverse employment action" includes "acts that carry 'a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.'"[48] "[N]ot everything that makes an employee unhappy is an actionable

---

[46] *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 & n.5 (10th Cir. 2007) (discussing how elements of prima facie case in discrimination cases vary depending on context); *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 n.1 (10th Cir. 2015) (acknowledging that the Tenth Circuit has used different versions of the prima facie test, but stating that it has "express[ed] a preference for more concise formulations." (citations omitted)).

[47] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (collecting cases).

[48] *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)).

adverse action.  Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."[49]

The Court agrees with Defendant that Plaintiff cannot support a discrimination claim on the basis of Captain Williams' statements to her.  According to the Complaint, Captain Williams mischaracterized her complaints about workplace discrimination as "personality conflicts, past history, and/or current issues."[50]  He also told Plaintiff that "he hoped that Plaintiff's history of such conflicts or any current conflicts would not prevent IACH from accomplishing its mission."[51]  While these statements may be evidence of pretext, or examples of an alleged hostile work environment, they are not adverse employment actions standing alone.  Plaintiff alleges no facts that demonstrate Captain Williams' statements caused a change, much less a significant change, in her job responsibilities or benefits.  Therefore, Defendant's motion to dismiss this claim is granted.

The only statement in the Complaint about Plaintiff's reassignment is that "Plaintiff's second-level supervisor . . . reassigned Plaintiff supposedly because Plaintiff had created a hostile work environment due to her complaints of racism in the workplace."[52]  As stated above, reassignment can be an adverse employment action when it involves a significant change in responsibility.  But the Court agrees with Defendant that, as pled, there are no facts suggesting that the reassignment occurred under circumstances giving rise to an inference of discrimination.  Instead, the Complaint states that Plaintiff was reassigned because of her protected activity.

---

[49] *Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 604 (10th Cir. 2019) (quoting *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185–86 (10th Cir. 2018)).

[50] Doc. 1 ¶ 10.

[51] *Id.*

[52] *Id.* ¶ 11.

Although such facts plausibly support a retaliation claim, as explained below, they do not support a discrimination claim.  Accordingly, Defendant's motion to dismiss this claim is granted.

### 4.     Discrete Acts of Retaliation—Captain Williams' Statements and Reassignment

The elements "of a prima facie claim of retaliation under Title VII are: "(1) that [Plaintiff] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[53]  Defendant argues that Plaintiff fails to allege facts that plausibly state the elements of retaliation as to Captain Williams' statements and her reassignment.

#### a.     Protected Activity

First, Defendant argues that Plaintiff fails to allege that she engaged in protected opposition to discrimination on both remaining theories of discrete retaliation.  Protected opposition to discrimination "can range from filing formal charges to complaining informally to supervisors."[54]  A plaintiff need only show that when she engaged in protected opposition, she had a reasonable, good-faith belief that the opposed behavior was discriminatory.[55]  "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the

---

[53] *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir.2011)).

[54] *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1136 (10th Cir. 2005) (citing *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004)).

[55] *Hertz*, 370 F.3d at 1015–16.

[statute]."[56]  As a basis for both remaining claims of retaliation, Plaintiff alleges that she engaged in protected opposition to discrimination when she complained about racism in the workplace. She specifically references "EEO and Army Regulation 15-6 investigations" pertaining to these complaints.[57]  Plaintiff has sufficiently pled that she engaged in protected opposition to discrimination.

### b.     Captain Williams' Statements

Next, Defendant argues that Captain Williams' statements do not constitute a materially adverse action.  A retaliation claim requires an action that is "materially adverse" such that it could well "dissuade[] a reasonable worker from making or supporting a charge of discrimination."[58]  "While the employer's conduct need not affect the terms and conditions of employment, the inquiry is an objective one, and not based on a 'plaintiff's personal feelings.'"[59] "Acts that carry 'a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects' may be considered adverse actions, although '"a mere inconvenience or an alteration of job responsibilities" will not suffice.'"[60]  This is a less stringent standard than applies when determining whether a plaintiff has suffered a materially adverse action sufficient to support a discrimination claim.[61]

---

[56] *Cerda v. Cillessen & Sons, Inc.*, 19-1111-JWB, 2020 WL 416979, at *3 (D. Kan. Jan. 27, 2020) (alteration in original) (quoting *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1203 (10th Cir. 2008)) (citations omitted).

[57] Doc. 1 ¶¶ 9, 10, 11, 13, 14, 15.

[58] *Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006)).

[59] *Daniels v. UPS, Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (quoting *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009)) (citing *White*, 548 U.S. at 64).

[60] *Reinhardt*, 595 F.3d at 1133 (quoting *Annett v. Univ. of Kan*., 372 F.3d 1233, 1239 (10th Cir. 2004)).

[61] *See White*, 548 U.S. at 67 ("[W]e conclude that Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. We therefore reject the standards applied in the Courts of Appeals

Even considering that the adverse action showing is less stringent on a retaliation claim than it is on a discrimination claim, the Court finds that Captain Williams' statements do not rise to a level of seriousness that would carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects. Taking the facts alleged as true, Captain Williams mischaracterized Plaintiff's claims to her and told her that he hoped the claims would not interfere with IACH's mission. While these statements may be evidence of the hostile work environment claims described above, they do not form the basis of a discrete materially adverse action that would support an independent claim of retaliation. Therefore, the Court grants Defendant's motion to dismiss Plaintiff's retaliation claim based on Captain Williams' statements.

### c.     Reassignment

Finally, the Court considers Plaintiff's retaliation claim based on reassignment. Defendant argues that Plaintiff fails to sufficiently allege the adverse action and causal connection elements of this claim. The Court finds that Plaintiff has sufficiently pled both elements of this claim. Plaintiff alleges that she was reassigned after she filed her complaint of racism in the workplace based on Defendant's finding that she was the one that created a hostile work environment due to her complaints. It is reasonable to infer from the facts alleged that Plaintiff contends Defendant's characterization is incorrect. Unlike her discrimination claim, Plaintiff need not demonstrate that her reassignment affected the terms and conditions of her employment. It is plausible that Plaintiff's reassignment carried a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects. It is plausible

---

that have treated the antiretaliation provision as forbidding the same conduct prohibited by the antidiscrimination provision and that have limited actionable retaliation to so-called 'ultimate employment decisions.'").

that a reasonable employee would be dissuaded from complaining of discrimination when faced with the reassignment alleged in the Complaint.  Therefore, she has pled facts to support this element.

As for the third element of the retaliation claim, a causal connection exists between the protected activity and the materially adverse action where retaliatory animus was a "but-for" cause of the adverse action.[62]  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[63]  In the Tenth Circuit, it is sufficient evidence of causation where "protected activity is closely followed by an adverse employment action."[64]

Defendant urges that the Complaint does not indicate when the protected activity occurred, therefore Plaintiff failed to plead facts to support close temporal proximity between her protected activity and the reassignment.  The Court disagrees that such facts are necessarily required at the pleading stage.  Close temporal proximity is one way, but not the only way, to prove causation.  Plaintiff pleads that the decision to reassign her was "due to her complaints of racism."[65]  While the Court acknowledges these facts are not detailed, they are sufficient under the pleading standard to state a short and plain statement for retaliation on the basis of Plaintiff's reassignment.  Defendant's motion to dismiss this claim is therefore denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 10) is **granted in part and denied in part**.  The motion is granted on Plaintiff's discrete claims of discrimination, and on Plaintiff's discrete claim of retaliation based on Captain

---

[62] *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 516 (10th Cir. 2015); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359–60 (2013).

[63] *Nasser*, 570 U.S. at 360.

[64] *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016).

[65] Doc. 1 ¶ 11.

Williams' statements, as alleged in paragraph 10 of the Complaint.  Defendant's motion to dismiss is denied as to the discriminatory and retaliatory hostile work environment claims, and as to Plaintiff's discrete claim of retaliation based on her reassignment.

**IT IS SO ORDERED.**

Dated: March 9, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE