## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LEONA WALKER,

      Plaintiff,

      v.                                  Case No. 22-2190-JAR

CHRISTINE E. WORMUTH, Secretary of the
Army,

      Defendant.

## MEMORANDUM AND ORDER

Plaintiff Leona Walker brings this action against Defendant Christine E. Wormuth, Secretary of the United States Army, alleging claims under Title VII of the Civil Rights Act of 1964. Before the Court is Defendant's Motion for Summary Judgment (Doc. 62). The motion is fully briefed and the Court is prepared to rule. For the reasons explained below, Defendant's motion for summary judgment is granted.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3] A fact is "material" if, under

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  A dispute

of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact

could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine dispute of material fact

and entitlement to judgment as a matter of law.[6]  Once the movant has met the initial burden of

showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving

party to "set forth specific facts showing that there is a genuine issue for trial."[7]

The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8]

Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence

in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  In setting

forth these specific facts, the nonmovant must identify the facts "by reference to affidavits,

deposition transcripts, or specific exhibits incorporated therein."[10]  A nonmovant "cannot create

a genuine issue of material fact with unsupported, conclusory allegations."[11]  In responding to a

motion for summary judgment, a party cannot rest on "ignorance of the facts, on speculation, or

on suspicion" to escape summary judgment.[12]

---

[4] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[8] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[10] *Adler*, 144 F.3d at 671.

[11] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[12] *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (quoting *Conaway v. Smith*, 853 F.3d 789, 794 (10th Cir. 1988)).

Summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[13]

## II.    Uncontroverted Facts

Plaintiff appears to misunderstand that Defendant is moving for summary judgment rather than dismissal for failure to state a claim.[14]  As described in the preceding section, Plaintiff can no longer rest on her allegations in the Complaint to controvert facts that Defendant supports with deposition testimony, affidavits, or other record evidence.[15]  Plaintiff, as the nonmoving party, must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for" her.[16]  Yet, she attaches no evidence to her response, and attempts to controvert Defendant's statements of uncontroverted facts without citation to the record.

Under Fed. R. Civ. P. 56(e), the Court has several options where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)."  The Court may deem a fact undisputed,[17] and the Court may grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[18]  Under Rule 56(e)(2), the Court will deem

---

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[14] Plaintiff titled her response brief as an "Objection and Response Motion to Dismiss," and repeatedly relies on her allegations in the Complaint to controvert Defendant's statements of fact.  *See* Doc. 68.

[15] The Court also notes that Plaintiff's many references to the allegations in her Complaint are unavailing because, at this stage of the proceedings, the Pretrial Order has superseded the pleadings.  Doc. 58; *see* Fed. R. Civ. P. 16(d); D. Kan. R. 16.2(a).

[16] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[17] Fed. R. Civ. P. 56(e)(2).

[18] Fed. R. Civ. P. 56(e)(3).

undisputed the facts presented in Defendant's summary judgment brief, to the extent they are supported by the record. With this guidance in mind, the Court finds that the following facts are uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff as the nonmoving party.

Plaintiff is an African American woman. She started working at Irwin Army Community Hospital ("IACH") in May 1996. Plaintiff was promoted to nurse case manager ("NCM") in 2005, and worked as a NCM until her retirement.

For the period ending August 31, 2017, Plaintiff's supervisor, Major Mary Ugaddan gave Plaintiff an overall "2" (Excellent) rating, the second highest rating. Plaintiff's second-level supervisor, Joyce Striggow approved this rating. Plaintiff received a bonus based on this 2017 rating.

### Army Regulation ("AR") 15-6 Investigation

In November 2017, the Company Commander initiated an AR 15-6 investigation into allegations of Plaintiff's misconduct. The investigation was conducted by an experienced employee from the IACH for the purpose of determining the facts and circumstances surrounding an allegation that Plaintiff caused a hostile work environment. This investigation began in December 2017.

### 2018 Performance Evaluation

In May 2018, Maj. Ugaddan again completed Plaintiff's performance evaluation, which included five performance elements. For each element, the reviewer could rate the employee as "outstanding," "fully successful," "unacceptable," or "not rated."[19] Maj. Ugaddan rated Plaintiff as "fully successful" on three of the elements, and "outstanding" on one.

---

[19] Doc. 63-5.

Element 5 on the evaluation was "Service Excellence."  This element included the following standards: (1) positively impacts others and fosters a culture of trust, (2) models integrity and discipline, (3) resolves complaints and conflicts at the lowest level, (4) no more than one incident of conveying a non-professional nursing image towards patients and team members, and (5) no more than one validated coworker or customer concern.  Maj. Ugaddan was aware that the AR 15-6 investigation was active at the time she completed the evaluation.  "[B]ecause [she] could not confirm that there were no validated negative concerns or no unprofessional nursing image, [she] did not feel comfortable rating Plaintiff on Element 5."[20]

Maj. Ugaddan asked Hope Brunton, who was a Supervisory Management Analyst in the Human Resources Division, and Striggow, who was Chief of Medical Management, for advice on how to complete Element 5.  Brunton advised her to include the following language: "NOT RATED due to open 15-6 investigation regarding an EEO Complaint.  However, promoted esprit de corps by special participation in Battalion Holiday Party, and was identified by HRC-SAV team during soldier interviews as having gone out of her way to assist a soldier."[21]  The decision not to rate Plaintiff on Element 5 complied with the Defense Performance Management and Appraisal Program ("DPMAP") and Article 25 of the Collective Bargaining Agreement— Performance Management.

A "not rated" element on a performance evaluation does not weigh against an employee's overall rating; it means that the element is not considered in the average of all elements on the final performance rating.  Plaintiff's summary rating was 3.5, and her "Rating of Record" was "Fully Successful."[22]  If Maj. Ugaddan had rated Walker on Element 5, she would have been

---

[20] Doc. 63-20 ¶ 26.

[21] Doc. 63-22 ¶ 8.

[22] Doc. 63-20 ¶ 30.

rated fully successful and her overall rating would have been 3.0.  The failure to rate did not affect Plaintiff's pay, GS scale, status, benefits, or compensation.

Plaintiff did not receive a bonus after this 2018 evaluation.  She was ineligible to receive a bonus because the Army Incentive Awards Program regulations provide: "No discretionary monetary or honorary award for performance or achievement will be made to an individual who . . . [i]s either under investigation, or upon whom disciplinary or adverse action based on performance or conduct is pending."[23]  Before an employee can receive an award, the nominating commander must affirm that "there are no current EEO complaints or personal adverse actions pending against the nominee."[24]

### *AR 15-6 Investigation's Findings*

The AR 15-6 investigator issued her decision on March 27, 2018, and made the following findings:

    a.    [Plaintiff] made comments that were racial in nature, suggesting she was mistreated due to race.

    b.    [Plaintiff] likely created a hostile work environment by going around her chain of command and encouraging soldiers to go around their chain of command.

    c.    [Plaintiff] incited personnel and encouraged a hostile environment.  Her verbal conduct and actions had the purpose of unreasonably interfering with an individual's work performance, which did not comply with Anti-Harassment policy.

    d.    [Plaintiff's] influence over soldiers and cadre within the Warrior Transition Battalion ("WTB") was a negative one.[25]

The investigator recommended "appropriate administrative actions be taken."[26]

---

[23] Doc. 63-8 at 9.

[24] *Id.* at 10.

[25] Doc. 58 ¶ 2.ix.

[26] Doc. 63-9 at 4.

On May 31, 2018, based on the results of this investigation, Plaintiff received a three-year letter of reprimand.  She was cited for "creating a hostile or negative working environment for coworkers or staff members."[27]  The letter was placed in Plaintiff's Official Personnel Folder. Her position did not change; she continued to work as a NCM.  The reprimand did not lead to a change in Plaintiff's compensation, benefits, grade level, pay, or title.

### Reassignment

On July 2, 2018, Striggow reassigned Plaintiff from the WTB to the Department of Behavioral Health, Combat Aviation Brigade / Department of Behavioral Embedded Behavioral Health Unit based on the findings of the AR 15-6 investigation that Plaintiff created a hostile or negative work environment.  Army regulations define reassignment as "a change of an employee, while serving continuously within the same agency, from one position to another without promotion or demotion."[28]  Plaintiff's position and title remained NCM.  Her duty location changed to a different building.  The reassignment did not change Plaintiff's compensation, benefits, grade level, pay, or title.

### Plaintiff's EEO Complaints

Plaintiff filed her first Formal Complaint of Discrimination ("EEO Complaint") on June 26, 2018.[29]  She checked the boxes for race and age.  In the narrative portion of the form, Plaintiff stated that it was improper for her evaluation to contain a reference to the open AR 15-6 investigation.  She also alleged that she was "singled out for this treatment due to my ongoing

---

[27] Doc. 58 ¶ 2.x.

[28] Doc. 63-21 (quoting 5 C.F.R. § 210.102(b)(12)).

[29] The Court takes judicial notice that Plaintiff filed earlier EEO complaints on January 4, 2017, June 21, 2017, and August 9, 2017; these were the subject of an earlier, separate lawsuit.  *Walker v. Wormuth*, No. 20-CV-02338-EFM-JPO, 2021 WL 5113679, at *1–2 (D. Kan. Nov. 3, 2021).

battle for equal opportunity at [IACH], my race (African American) and my age."[30]  She stated

that she was subjected to an "ongoing hostile work environment" when she complained about

mistreatment, and specifically referenced an email from Captain Williams related to patient

concerns and a comment by Sergeant Matthews.

Plaintiff filed a second EEO Complaint on July 19, 2018.  She checked the boxes for

race, gender, and age.  She also checked "Reprisal," with a note that stated "See EEO Counselor

Report."  In the narrative portion of the EEO Complaint, Plaintiff stated, *inter alia*:

> I continue to be subjected to a hostile work environment, and to
> experience discrimination in the workplace due to my race, age
> and engagement in prior EEO activity.  The most recent
> manifestations of this discrimination, mistreatment, and retaliation
> is a three year letter of reprimand, and my reassignment from the
> WTB.  Both of these actions were purportedly based on a 15-6
> investigation, which incorrectly and falsely concluded that I was a
> racist who had created a hostile work environment at the WTB.
>
> The Agency never intended to conduct a proper 15-6 investigation.
> Rather the 15-6 investigation was intended to provide a pretext for
> adverse discipline against me and my reassignment to the WTB.[31]

Plaintiff further explained that the investigator and person who made the allegations against her

worked together to use the AR 15-6 report to justify adverse action against her.

On February 24, 2022, the Department of the Army issued its final decision on Plaintiff's

EEO Complaints.  In a 12-page decision, the Department denied Plaintiff's EEO claims, finding

that Plaintiff "was not subjected to discrimination based upon race, age, and/or in reprisal for

engaging in protected EEO activity."[32]  The decision considered whether Plaintiff was

discriminated against and subjected to a hostile work environment based upon her race or age,

---

[30] Doc. 63-17 at 5.

[31] Doc. 63-18 at 4.

[32] Doc. 63-19 at 13.

and whether she was subjected to "reprisal" for prior EEO complaints made in 2016 and 2017 when: (1) Maj. Ugaddan failed to rate her on her 2018 evaluation; (2) a coworker, CPT Brandon Williams, responded to her email on May 16, 2018, and included the following comment, "Personality conflicts, past history, and/or current issues"; and (3) she was reassigned to the Department of Behavioral Health.

Walker retired effective July 31, 2021, to obtain retirement benefits.

## III.    Discussion

In the Pretrial Order, Plaintiff alleges the following claims: (1) discriminatory hostile work environment in violation 42 U.S.C. § 2000e-2; (2) retaliatory hostile work environment in violation of 42 U.S.C. § 2000e-3; and (3) retaliation in violation of 42 U.S.C. § 2000e-3(a).[33] Defendant argues that the retaliatory hostile work environment claim was not administratively exhausted, and that summary judgment is appropriate on the merits of all three claims. The Court addresses each claim in turn.

### A.    Discriminatory Hostile Work Environment

Plaintiff alleges a claim for racially discriminatory hostile work environment based on the AR 15-6 investigation and resulting three-year letter of reprimand. To survive summary judgment on her hostile work environment claim under Title VII, Plaintiff must show that a reasonable jury could find that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.[34] The Court determines the existence

---

[33] The Court previously dismissed the following claims on Defendant's motion to dismiss for failure to state a claim: (1) her discrete claims of race discrimination; (2) and her discrete claim of retaliation based on Captain Williams' statements to her.

[34] *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1140 (10th Cir. 2008) (citing *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)).

of such an environment by looking at the totality of the circumstances in the workplace, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[35]  A hostile work environment claim may be established by showing either pervasiveness or severity—they "are independent and equal grounds" for such a claim.[36]  "Nevertheless, those two grounds 'are, to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once . . . , while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute.'"[37]  The Court evaluates these factors from both a subjective and an objective viewpoint,[38] considering not only the effect that the discriminatory conduct actually had on Plaintiff,  but also the impact it would likely have had on a reasonable employee in Plaintiff's position.[39]

In requiring a showing of a workplace permeated by severe or pervasive discriminatory conduct, the Supreme Court struck a balance between two extremes, creating "a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury."[40]  "'[S]imple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"[41]  On the other hand, conduct need not be so severe or

---

[35] *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

[36] *Tademy*, 614 F.3d at 1144.

[37] *Id.* (quoting *Cerros v. Steel Techs, Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)).

[38] *Id.* (citing *Smith v. Nw. Fin. Acceptance, Inc*., 129 F.3d 1408, 1413 (10th Cir. 1997)).

[39] *Harris*, 510 U.S. at 21−22.

[40] *Id.* at 21.

[41] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

pervasive that it seriously affects a plaintiff's psychological well-being.[42]  The determination of whether a hostile environment existed "is not, and by its nature cannot be, a mathematically precise test."[43]

Defendant moves for summary judgment on the discriminatory hostile work environment claim because there is no evidence of severe or pervasive discriminatory conduct.  The Court agrees.  Defendant has met its summary judgment burden of identifying no genuine issue of material fact that: (1) the AR 15-6 investigation was initiated in November 2017 and was conducted by an experienced employee from the IACH for the purpose of determining the facts and circumstances surrounding an allegation that Plaintiff caused a hostile work environment; (2) the investigator found that Plaintiff herself created a hostile work environment by going around the chain of command and encouraging soldiers to do so, and that Plaintiff incites personnel and encourages a hostile work environment; (3) that the independent findings in the AR 15-6 report resulted in Plaintiff's three-year letter of reprimand; and (4) there is no indication that the AR 15-6 investigator harbored a racial animus.

Moreover, the Court declines Plaintiff's invitation to find that the AR 15-6 investigation based on an allegation of Plaintiff's racism, standing alone, created a discriminatory hostile work environment under the standards set forth above.  Plaintiff's claims hinge on her allegation that the investigation was pretextual, and that Defendant's employees conspired to investigate her as retribution for her many years of protected activity—complaining that she was treated poorly based on her race.  But at summary judgment, Plaintiff must come forward with more than conclusory assertions in the face of Defendants' evidence.  She has not done so.  Accordingly,

---

[42] *Nieto v. Kapoor*, 268 F.3d 1208, 1219 (10th Cir. 2001) (citing *Harris*, 510 U.S. at 22).

[43] *Id.* at 1220 (quoting *Harris*, 510 U.S. at 22).

the Court finds that there is no genuine issue of material fact that the AR 15-6 investigation and resulting letter of reprimand created a workplace permeated with severe or pervasive discriminatory conduct. Summary judgment is granted to Defendant on Plaintiff's discriminatory hostile work environment claim.

### B.    Racially Hostile Work Environment

Plaintiff alleges that her claim for retaliatory hostile work environment is based on Maj. Ugaddan's failure to rate her on Element 5 of the 2018 performance evaluation and the denial of a performance bonus that year. Defendant moves for summary judgment based on administrative exhaustion and on the merits.

### 1.    Administrative Exhaustion

"Federal employees alleging discrimination or retaliation prohibited by Title VII or the Rehabilitation Act must comply with specific administrative complaint procedures in order to exhaust their administrative remedies."[44] Under the governing regulations, a federal employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."[45] "If the matter is not resolved informally, the counselor provides a written notice to the federal employee of the right to file a formal EEO complaint for a decision by an ALJ. Thereafter, the federal employee may file a lawsuit in federal court within 90 days of receiving

---

[44] *Padilla v. Mnuchin*, 836 F. App'x 674, 677 (10th Cir. 2020) (quoting *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020)); 42 U.S.C. § 2000e-16(c).

[45] *Green v. Brennan*, 578 U.S. 547, 553 (2016) (quoting 29 C.F.R. § 1614.105(a)(1)).

notice of final agency action on the formal complaint by the ALJ."[46]  Failure to exhaust is a claims-processing rule that is an affirmative defense.[47]

Defendant does not challenge the timeliness of Plaintiff's administrative complaint. Instead, she argues that Plaintiff's retaliatory hostile work environment claim is outside the scope of either EEO complaint.  "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."[48]  The Court must liberally construe Plaintiff's charges to determine whether any particular claim was exhausted.[49]  To the extent Plaintiff alleges discrete incidents of discrimination based on adverse employment actions, each one must be administratively exhausted.[50]  At a minimum, Plaintiff must "identif[y] the type of discrimination complained of, the alleged harasser, and an approximate time period."[51]  Failure to mark a box on the complaint form "creates a presumption that the charging party is not asserting claims represented by that box.  The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim."[52]

Defendant does not dispute that Plaintiff's EEO complaints exhausted her discriminatory hostile work environment and discrete retaliation claims.  But Defendant maintains that the EEO

---

[46] *Russell v. Wormuth*, No. 22-4035-DDC, 2023 WL 4295420, at *3 (D. Kan. June 30, 2023) (citing 29 C.F.R. §§ 1614.105(d), .407(a)–(b)).

[47] *Hickey*, 969 F.3d at 1118.

[48] *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005), *overruled on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018)).

[49] *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007), *overruled on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018)).

[50] *Id.*

[51] *Macias v. Sw. Cheese Co.*, 624 F. App'x 628, 635 (10th Cir. 2015) (alteration in original) (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998)).

[52] *Jones*, 502 F.3d at 1186.

complaints did not include a claim for retaliatory hostile work environment.  The Court

disagrees.  Plaintiff's second EEO complaint checked the box for "reprisal."  While this alone is

insufficient to demonstrate that she exhausted her claims for both retaliation *and* retaliatory

hostile work environment,[53] the narrative portions of both EEO complaints are replete with

references to "hostile work environment" and generally claim that Defendant's initiation of

Defendant's EEO investigation against her, as well as the other incidents referred to in her

complaints, are part of a hostile work environment.  It is reasonable to expect that an

administrative investigation would follow with respect of both types of hostile work environment

claims.  Liberally construing the narrative sections of both complaints, the Court finds that

Plaintiff sufficiently exhausted both discriminatory and retaliatory hostile work environment

claims.

### 2.    Merits

Plaintiff urges that, when considered together, Maj. Ugaddan's failure to rate her on

Element 5 of the 2018 performance evaluation, and the failure to give her a bonus that year,

constitute retaliatory harassment.  The Court has previously recognized that the Tenth Circuit has

not explicitly recognized a claim for retaliatory harassment,[54] but Defendant does not dispute that

such a claim is cognizable for purposes of this motion.  Therefore, for purposes of this motion,

the Court assumes without deciding that a retaliatory hostile work environment is a cognizable

claim in the Tenth Circuit.  The elements of this claim are the same as the requisite elements of a

---

[53] *Walker v. Wormuth*, No. 20-CV-02338-EFM-JPO, 2021 WL 5113679, at *5 (D. Kan. Nov. 3, 2021) (concluding in earlier lawsuit by the same plaintiff that checking the "reprisal" box is not enough, standing alone, to exhaust a retaliatory hostile work environment claim, as opposed to a stand-alone claim for retaliation); *Lawson v. Potter*, No. 08-CV-04052-JAR-KGS, 2010 WL 11564954, at *9 (D. Kan. Mar. 3, 2010) ("Unlike a retaliation claim, which focuses on discrete incidents, a hostile work environment claim requires a court to consider evidence of general work atmosphere as well as specific instances of hostility.").

[54] *See Kline v. Utah Anti-Discrimination & Labor Div.*, 418 F. App'x 774, 780 n.2 (10th Cir. 2011).

prima facie case of retaliation: (1) protected opposition to discrimination; (2) a materially adverse action; and (3) a causal connection between the protected activity and the materially adverse action.[55]  Additionally, "the conduct must be sufficiently severe or pervasive that it could well dissuade a reasonable worker from engaging in protected activity."[56]

As with the discriminatory hostile work environment claim, Plaintiff must demonstrate that Defendant's conduct was "objectively and subjectively offensive," and the Court looks to the same factors: "the frequency and severity of the harassment, whether it is physically threatening or humiliating, and whether it interferes with an employee's work performance."[57] And, like the discriminatory hostile work environment claim, Plaintiff wholly fails to identify evidence to support her claim and instead relies on the allegations in the Complaint to oppose Defendant's motion.

Defendant has come forward with evidence that Maj. Ugaddan's failure to rate Plaintiff on Element 5 of the 2018 performance evaluation was not retaliatory.  Maj. Ugaddan understood that the AR 15-6 investigation and appeal was ongoing, and because Plaintiff's Element 5 score would be negatively impacted by a negative AR 15-6 report, Maj. Ugaddan opted not to rate Plaintiff on this fifth element at the direction of her supervisors.  It is uncontroverted that Maj. Ugaddan's failure to rate Plaintiff led to a better overall score for Plaintiff than she would have had if Maj. Ugaddan had rated her.  Moreover, Defendant has come forward with evidence that Plaintiff's failure to receive a bonus that year was due to the open AR 15-6 investigation, not the performance evaluation.  There is no evidence that Plaintiff would have qualified for a bonus had

---

[55] *Adcox v. Brennan*, No. 15-CV-9258-JWL, 2017 WL 2405326, at *7 (D. Kan. June 2, 2017) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211–12 (10th Cir. 2008)).

[56] *Id.* (citations omitted).

[57] *Lujan v. Johanns*, 181 F. App'x 735, 738 (10th Cir. 2006).

she been rated.  Again, Plaintiff relies on conclusory assertions about the likelihood that she would have received a bonus but for the "not rated" score on Element 5 of that performance evaluation.  Such assertions are insufficient at the summary judgment stage.  Accordingly, there is no genuine issue of material fact that Plaintiff's 2018 performance evaluation and lack of bonus do not constitute a sufficiently severe or pervasive hostile work environment.

## C.    Retaliation Claims

In the Pretrial Order, Plaintiff alleges that her retaliation claim is based on (1) her reassignment and (2) Defendant's accusation that she was "racist due to her complaints of racism in the workplace."[58]  This claim must be decided under the familiar *McDonnell Douglas Corp. v. Green*[59] burden-shifting framework because Plaintiff does not rely on direct evidence of retaliation.[60]  Under *McDonnell Douglas*, Plaintiff initially bears the burden of production to establish a prima facie case of discrimination or retaliation.[61]  The burden of establishing the prima facie case is "not onerous."[62]  If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a facially non-retaliatory reason for its actions.[63]  If Defendant articulates a legitimate non-discriminatory reason, the burden shifts back to Plaintiff to present evidence from which a jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief."[64]

---

[58] Doc. 58 at 12.

[59] 411 U.S. 792, 802–05 (1973).

[60] *See, e.g.*, *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).

[61] *McDonnell Douglas*, 411 U.S. at 802.

[62] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

[63] *Id.*; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

[64] *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

### 1.   Prima Facie Case

The elements of a prima facie claim of retaliation under Title VII are: (1) the employee engaged in protected opposition to discrimination; (2) the employee suffered an adverse employment action during or after his protected opposition that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.[65]   Defendant argues that Plaintiff fails to meet her burden of production on the prima facie case because there is no evidence that her reassignment was an adverse employment action or that the AR 15-6 investigation was caused by her protected activity.   The Court agrees.

A retaliation claim requires an action that is "materially adverse" such that it could well "dissuade[] a reasonable worker from making or supporting a charge of discrimination."[66] "While the employer's conduct need not affect the terms and conditions of employment, the inquiry is an objective one, and not based on a 'plaintiff's personal feelings.'"[67]   "Acts that carry 'a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects' may be considered adverse actions, although '"a mere inconvenience or an alteration of job responsibilities" will not suffice.'"[68]

In deciding Defendant's earlier motion to dismiss the retaliation claim based on reassignment, the Court found it plausible that Plaintiff's reassignment carried a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.

---

[65] *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011).

[66] *Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006)).

[67] *Daniels v. UPS, Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (quoting *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009)) (citation omitted).

[68] *Reinhardt*, 595 F.3d at 1133 (quoting *Annett v. Univ. of Kan.*, 372 F.3d 1233, 1239 (10th Cir. 2004)).

The Court further found it plausible that a reasonable employee would be dissuaded from complaining of discrimination when faced with the reassignment alleged in the Complaint. While the Court found that Plaintiff pled facts to support this element of her claim, such allegations in the Complaint no longer suffice on summary judgment.  Under *McDonnell Douglas*, Plaintiff now carries a burden of producing some evidence that the reassignment was materially adverse.  But the only evidence before the Court is that the reassignment was neither a promotion nor demotion, that her position and title remained NCM, that her duty location changed to a different building, and that the reassignment did not change Plaintiff's compensation, benefits, grade level, pay, or title.  There is no evidence cited in the record by which the Court could infer what Plaintiff argues in her response—that the reassignment to the Department of Behavioral Health was objectively more than a mere inconvenience or alteration of job responsibilities.  Plaintiff's unsupported assertions in the response brief that this department was "the most stressful, least desirable caseload" is not enough to meet her burden of production on summary judgment.[69]

Next, Plaintiff alleges that the AR 15-6 investigation itself was retaliation for her protected activity of filing EEO complaints about race discrimination.  A causal connection exists between the protected activity and the materially adverse action where retaliatory animus

---

[69] Plaintiff's citation to the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346, 359 (2024), is inapposite.  There, the Court held that Title VII's antidiscrimination provision did not require a plaintiff to show that an alteration of a term or condition of employment caused a "significant harm." *Id.*  But the Court made clear that its holding did not impact the statute's anti-retaliation provision, which governs Plaintiff's claim here: "The Court [in *White*] held that the provision applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm. . . . *White* adopted the standard for reasons peculiar to the retaliation context. The test was meant to capture those (and only those) employer actions serious enough to 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 357 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  In contrast, "[t]he anti-discrimination provision . . . simply 'seeks a workplace where individuals are not discriminated against' because of traits like race and sex." *Id.* at 358 (quoting *White*, 548 U.S. at 63).

was a "but-for" cause of the adverse action.[70]  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[71]  In the Tenth Circuit, where "protected activity is closely followed by an adverse employment action" it is sufficient evidence of causation.[72]  However, "where a considerable length of time has elapsed between a protected activity and an adverse employment action, a plaintiff wishing to survive summary judgment must 'present "additional evidence" tying the adverse employment actions to [the plaintiff's protected activity].'"[73]  The Tenth Circuit has also explained that "if the adverse action occurs three months out and beyond from the protected activity, then the action's timing alone will not be sufficient to establish the causation element."[74]

Plaintiff states that her "prior EEO activity" was the trigger for retaliation, but does not state when that protected activity occurred.  Plaintiff filed an EEO complaint in August 2017,[75] three months before the AR 15-6 investigation began—too long of a period to establish causation standing alone.  And Plaintiff identifies no other evidence that would support causation on this stand-alone retaliation claim.  Therefore, Plaintiff fails to meet her prima facie burden of production on her claim that she was retaliated against when Defendant opened the AR 15-6 investigation.

Assuming, *arguendo*, that Plaintiff supported her prima facie case with evidence, Defendant has satisfied the second step of the *McDonnell Douglas* framework by articulating a

---

[70] *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 516 (10th Cir. 2015); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359–60 (2013).

[71] *Nassar*, 570 U.S. at 360.

[72] *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1191 (10th Cir. 2016).

[73] *Id.* (alteration in original) (quoting *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)).

[74] *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) (citations omitted).

[75] *Walker v. Wormuth*, No. 20-CV-02338-EFM-JPO, 2021 WL 5113679, at *1–2 (D. Kan. Nov. 3, 2021).

legitimate, nonretaliatory reason for its actions. Defendant states that the reassignment was a
legitimate business decision based on the AR 15-6 investigation's finding that Plaintiff created a
hostile work environment in her former department. This is a legitimate nonretaliatory reason
for the reassignment decision. As for the AR 15-6 investigation, Defendant states that it initiated
the investigation per standard procedure based on an allegation by a doctor at IACH.[76]
Defendant has met its burden to articulate a facially non-retaliatory reason for its actions.

Thus, the burden would shift back to Plaintiff to demonstrate that Defendant's stated
reasons for the reassignment and investigation are pretext for retaliation. Pretext may be shown
by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered legitimate reasons for its action that a reasonable
factfinder could rationally find them unworthy of credence and hence infer that the employer did
not act for the asserted non-discriminatory reasons."[77] Pretext can also be demonstrated by
"direct evidence that the proffered rationale is false, or that the plaintiff was treated differently
from similarly-situated employees."[78] "The critical question regarding this aspect of the
*McDonnell Douglas* rubric is whether 'a reasonable factfinder could rationally find [the
employer's rationale] unworthy of credence and hence infer that the employer did not act for the
asserted [non-retaliatory] reasons.'"[79] The Court examines "the facts as they appear *to the*

---

[76] *See* Docs. 63-9, 63-11.

[77] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[78] *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011).

[79] *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015) (alterations in original) (quoting *Crowe*, 649 F.3d at 1196).

*person making the decision*"[80] and considers whether the decisionmaker "honestly believed those reasons and acted in good faith upon those beliefs."[81]

Plaintiff fails to acknowledge her pretext burden and fails to submit evidence in support of her retaliation claim. Therefore, even if Plaintiff could meet her nononerous burden of demonstrating a prima facie case of retaliation, she fails to demonstrate that Defendant's legitimate nonretaliatory reasons for the Army's conduct were a mere pretext for unlawful retaliation. Summary judgment is granted to Defendant on the retaliation claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 62) is **granted**. The Clerk is directed to enter judgment in favor of Defendant and terminate this action.

**IT IS SO ORDERED.**

Dated: December 18, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[80] *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) (en banc) (quoting *Watts v. City of Norman*, 270 F.3d 1288, 1295 (10th Cir. 2001)).

[81] *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quoting *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir.2004)).